425 So.2d 837 (1982)
WEST SIDE FUNERAL HOME, INC.
v.
Gilda NICHOLAS.
No. 5-275.
Court of Appeal of Louisiana, Fifth Circuit.
December 9, 1982.
Rehearing Denied February 17, 1983.
*838 John M. Garic, Post, Reinhardt & Rougelot, Metairie, for plaintiff-appellant.
Barry J. Landry, The Law Offices of Daniel E. Becnel, Jr., Reserve, for defendant-appellee.
Before CHEHARDY, KLIEBERT and CURRAULT, JJ.
CURRAULT, Judge.
This appeal arises from a judgment dismissing plaintiff's suit against defendant for money owed on a funeral services contract.
On March 20, 1979, defendant-appellee, Gilda Nicholas, signed a contract with plaintiff-appellant, West Side Funeral Home, Inc. for services in connection with the funeral of Mrs. Louise F. Nicholas, defendant's mother-in-law. The printed contract set forth the services to be rendered and the terms and conditions of the agreement. It also provided space for the name and address of the party to be billed separate and apart from the signature line.
While Mrs. Nicholas signed the agreement, she specifically designated that her father-in-law, Elphage Nicholas, be billed in the matter.
Subsequently, appellant sought to collect the funeral costs from appellee. The amount demanded was $2,289.65 plus interest of one percent per month dating from June 26, 1979. Receiving no satisfaction, suit was filed on December 13, 1979 for breach of contract.
Trial was held on September 29, 1981, by which time the father-in-law had died. In a judgment rendered October 14, 1981, appellant's demand was dismissed for reason that *839 the contract was unenforceable due to a mistake of fact. However, the trial judge reserved appellant's right to proceed against the Estate of Elphage Nicholas and/or the Estate of Louise F. Nicholas.
Appellant, West Side Funeral Home, Inc., appeals that judgment as it relates to appellee, Gilda Nicholas.
Appellant presents for our consideration the issue of whether the trial court erred in failing to hold appellee liable for the payment of the funeral costs pursuant to the written agreement which she signed.
Interpretations of contracts are governed by LSA-C.C. arts. 1945-1962. All clauses are interpreted by one to the other, giving sense that results from the entire act. LSA-C.C. art. 1955, Van Dung v. Tel Ag Services, Inc., 407 So.2d 1339 (La.App. 3d Cir.1981). It is an established point of law in Louisiana that mere failure to read an instrument does not free the party from the obligation contained therein. Leny v. Friedman, 372 So.2d 721 (La.App. 4th Cir. 1979), certiorari denied, 375 So.2d 943 (La. 1979).
Legal agreements, in addition, have the effect of law upon the parties and courts are bound to give them legal effect according to the true intent of the parties. LSA-C.C. 1945; Pendleton v. Shell Oil Co., 408 So.2d 1341 (La.1982). The intent is to be determined by the words of the contract when these are clear and explicit and lead to no absurd consequence. LSA-C.C. art. 1945; Baker v. Life General Security Ins. Co., 405 So.2d 1162 (La.App. 1st Cir.1981). If there exists a difference in intent, there can be no common consent and, consequently, no contract. LSA-C.C. art. 1945.
The trial court found in the case herein that the document was ambiguous, and for that reason attempted to ascertain the intent of the parties. He concluded that Mrs. Nicholas, the appellee, never intended to bind herself for the costs involved. We agree.
The record reveals that the contract was a printed form at the bottom of which spaces were provided for signature and for the name and address of the party to be billed. These provisions were equal in size of print, and they were placed side by side. Both immediately followed the terms, conditions, and promise to pay sections of the agreement. It is difficult to determine whether the purpose of the billing section was solely for accounting convenience or whether it was for actual financial responsibility. It is particularly ambiguous considering the delicate nature of the services to be provided. Often as a result of a death in the family, the circumstances may dictate that someone other than the responsible party make the final arrangements.
Following a determination that the contract was ambiguous, the trial court correctly allowed testimony in an attempt to ascertain the true intent of the parties. Pendleton, supra. Only two witnesses appeared at trial, and their testimony was contradictory. Mrs. Nicholas's testimony indicates that while she did not read the contract, she provided her father-in-law's name, with his permission, for the express purpose of assessing financial responsibility to him. She stated that her signature appeared on the document solely because her elderly father-in-law, who was in Norco, Louisiana, was extremely upset as were the rest of the family members, and someone's signature was required. The trial court evidently believed appellee's testimony that at no time did she intend to bind herself personally for the costs of the services.
It is well established that resolution of conflicting testimony is the function of the trial judge. In the absence of manifest error, this court is precluded from disturbing those findings. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). After a review of the record, we fail to find that the trial court was clearly wrong. Since appellee lacked the requisite intent necessary for the formation of a valid contract, she cannot be held liable for the money owed on the contract for funeral services.
After review of the law and facts and for the reasons stated herein, this court hereby affirms the holding of the trial court dismissing *840 plaintiff's suit, and reserving to them the right to pursue this action against the Estates, separately or together, of Elphage Nicholas and/or Louise F. Nicholas.
AFFIRM.