KLEES, Judge.
This appeal arises out of a suit brought by plaintiffs, Sewell, Sewell, Otto & Sewell, to enforce a compromise agreement which they had previously entered into with defendants, Sanco-Louisiana, Inc. and Jim Howard, Sanco’s general manager. The trial court held that defendants had failed to comply with the terms of the written agreement and awarded plaintiffs $15,000 in liquidated damages, plus $1,000 in attorney’s fees.
On appeal, defendants claim that the trial judge erred in finding them at fault for failing to perform their obligations under the agreement. Plaintiffs also appeal, claiming that the amount of damages awarded them is insufficient. After reviewing the testimony, we agree with the decision of the trial court as to liability, but find their assessment of damages to be incorrect.
The dispute between these parties goes back to September of 1982, when Sanco-Louisiana [hereinafter referred to as “San-co”] purchased from plaintiffs a lot on Morrison Road adjacent to property upon which *1095 plaintiffs operate the Court King Raquet-ball Club. Under the terms of the sale, Sanco was required to perform certain services in conjunction with the construction of a building it intended to erect on the property purchased. When Sanco began construction of the building without having performed these services, plaintiffs obtained an injunction against further construction on the grounds that compliance with the sale agreement would be made impossible if construction were to continue. Sanco appealed the issuance of the injunction, and, while the appeal was pending in this court, the parties entered into the “Settlement Agreement and Compromise” that is the subject of the present dispute. Following the signing of this agreement in October of 1984, both the injunction and the appeal of the injunction were dismissed. Approximately seven months later, plaintiffs filed in the district court their motion to judicially enforce the compromise agreement.
The written compromise agreement contains a list of several affirmative obligations to be performed by Sanco in consideration for plaintiffs’ dismissal of the injunction, including: (1) The removal of the exterior air conditioning units belonging to the Court King Raquetball Club from their present location to a location in the front of the Club, at a time to be chosen by Scott Sewell; (2) The pouring of a 25 foot long concrete sidewalk in front of the Club to run continuously from the sidewalk of the Sanco building, said work to be done on either the day before or the day of the actual laying of the slab of that building; (3) The construction of a two-story storage facility on the property, with the second story being designated for the use of Se-well, Sewell, Otto & Sewell; and, (4) The promise of Sanco and Mr. Howard to “immediately” begin to have drawn plans, under the supervision of Scott Sewell, in order to obtain a building permit for said storage facility, which had to be completed within 60 days of obtaining the permit. In addition, the agreement contains a stipulation that $15,000 shall be paid in liquidated damages should these obligations not be performed within the times designated, and a statement that “time ... [is] of the essence” in the performance of these duties. Finally, the agreement provides that Sanco shall deposit $5,000 in an escrow account as additional security for its performance and that, in the event of breach, the successful parties in litigation shall be entitled to reasonable attorney’s fees.
There is no question that the obligations enumerated in the agreement were not performed timely. Moreover, we agree with the trial court that Sanco’s failure to perform was due to its own fault, and not to any reluctance on the part of plaintiffs to cooperate. Defendants complain that Scott Sewell continuously refused to set up a time for the air conditioning units to be moved. However, the evidence shows that although Mr. Sewell sent defendants a letter on December 6, 1984 demanding that the work be done immediately, defendants’ contractor never set up an appointment with Mr. Sewell to do it. In addition, the testimony is uncontroverted that the sidewalk, which was to be poured in December, 1984, at the same time that the slab was laid for the Sanco building, was not actually poured until April of 1985, after the defendants had received plaintiffs’ letter demanding liquidated damages. Finally, the building permit was never applied for, probably because the final plans for the storage facility, although completed and delivered to defendant Jim Howard in November, 1984, were not submitted to Scott Sewell for his approval until the end of March, 1985. In view of this evidence, we cannot say that the trial judge’s decision to award plaintiffs liquidated damages was manifestly erroneous. See: Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Plaintiffs, who have appealed separately, complain that the trial judge erred by failing to award them the $5,000 in the escrow account in addition to the $15,000 liquidated damages, as stipulated by section “G” of the compromise agreement. They also complain that the sum awarded them for attorney’s fees is inadequate. In addition, the plaintiffs’ former attorney, who *1096 represented them in the court below, has filed an intervention asking for an increase in the award of attorney’s fees.
We find no manifest error in the trial judge's award of attorney’s fees, to trial counsel and therefore refuse to modify that award. However, we do find that appeal counsel is entitled to attorneys fees for this appeal and we award appeal counsel the sum of $750.00. Additionally we do find that the trial judge erred in refusing to award plaintiffs the $5,000 in the escrow account separately from the $15,000 stipulated as liquidated damages. Section “G” of the agreement signed by the parties reads:
G. SAN CO-LOUISIANA, INCORPORATED and JIM HOWARD agree to pay unto SEWELL, SEWELL, OTTO and SEWELL the sum of EXACTLY FIFTEEN THOUSAND AND NO/100 ($15,000.00) DOLLARS as liquidated damages, should the construction work outlined in paragraphs, C, D, and E above written, not be completed within the sixty (60) day period as stated in the previous paragraph, regardless of the reason for the delay, except that any delay caused by SEWELL, SE-WELL, OTTO and SEWELL, their agents or employees, shall interrupt and extend the running of this penalty clause during the period of any such delay, all of which is in addition to any funds held in escrow as mentioned elsewhere in this paper. (Emphasis added.)
This language leaves no doubt that the parties intended for the $5,000 placed in escrow to be awarded over and above the amount stipulated as liquidated damages. Contracts have the effect of law between the parties, and we are bound to carry out the parties’ intentions. Pendleton v. Shell Oil Co., 408 So.2d 1341 (La.1982). Accordingly we amend the trial court’s judgment to award plaintiffs the sum of $20,000, and an additional $750.00 attorneys fees to appeal counsel.
Accordingly, the judgment of the trial court is hereby amended to conform to our findings and is affirmed as amended.
AMENDED AND AFFIRMED.